## ELLIS v. SWANZEY.

Where a railroad corporation petitioned the selectmen of a town to lay out a highway, and in their petition stated that in laying their railroad a highway had been obstructed, and requested the selectmen to lay out a new highway as a substitute for the one taken for the railroad, and the selectmen laid out the road prayed for, and awarded that the damages for the land taken for the highway should be paid by the railroad company,—*Held*, that the town was not liable to the land owner for the damages awarded. *Held*, *also*, that if the laying of the road was valid at all, it must be regarded as having been done for the accommodation of the railroad corporation.

Whether the selectmen of a town have any power whatever to lay out a highway as a substitute for one taken by a railroad in the course of its construction, *quære* ?

DEBT, for the sum of $278, being the damages awarded to the plaintiff by the selectmen of Swanzey, on the third day of May, 1850, for a highway, laid out by them over the plaintiff's land in that town. The application to the selectmen for the laying out of the highway was as follows:

" To the selectmen of the town of Swanzey:

The undersigned, in behalf of the Ashuelot Railroad Company, represent that in laying of the said railroad through said Swanzey, certain highways have been obstructed; they therefore respectfully request you to lay out a new highway, as a substitute for the one taken for the railroad near George W. Ellis', also another for that taken for the railroad near Tristram Aldrich's, and assess the damages to the owners of land on which said new highways may pass, agreeable to the laws of the State of New Hampshire.

April 11th, 1850."

This petition was signed by the president and directors of the railroad, and presented to the selectmen. An order of notice was duly issued by them for a hearing on the 22d day of April, and Ellis was notified accordingly. Ellis acknowledged due service of the notice, and waived all ob-

jections in regard to time. A hearing was had, and the road laid out according to the prayer of the petition.

In their report, the selectmen, after setting forth that they have notified those interested in the matter, and heard Ellis, being the only one who appeared, proceed to say that they have made a personal examination of the several routes proposed, and of the highway for which such new highway is designed to be a substitute, and have duly considered the petition, and are of opinion that there is occasion for a new highway on the route described in the petition. They then lay out the road over the land of Ellis, describing it by metes and bounds, and make their award of damages in these words: " We award to the said George W. Ellis, owner of land taken for said highway on said route, the sum of two hundred and seventy-eight dollars, to be paid by said Ashuelot Railroad Company. Given under our hands, at Swanzey, this third day of May, 1850."

The highway was constructed and opened for public travel by the Ashuelot Railroad Company in the spring of 1850, and has since been in use. The plaintiff demanded the damages of the town on the thirtieth day of October, 1851, payment of which was refused, and this action was commenced on the tenth day of February, 1852.

The parties agreed that if the court should be of opinion that the plaintiff is entitled to recover the damages of the town, that judgment be entered accordingly; otherwise that judgment should be entered for the defendants.

*Wheeler & Faulkner*, for the plaintiff.

All the statute requirements were complied with, and the highway was legally laid out. A petition was presented to the selectmen, stating the obstruction to the former highway, by the location of the railroad, and asking for the laying out of a new one. The necessary order was made, and notice given of a hearing on the petition, and the selectmen, hav-

ing found that there was "occasion for a new highway on the route described in the petition," proceeded to lay out the same, and caused a record to be made by the town clerk. They further assessed damages to the land owner, the present plaintiff, as they were required to do. Rev. Stat. ch. 49, § 13. The addition to the assessment, that the sum awarded was to be paid by the Ashuelot Railway Company, contains a direction which they had no authority to insert. They could not in this way qualify or limit their acts. So far as they acted within the scope of their powers, their doings are valid. What is beyond this must be rejected as void.

The selectmen were authorized to determine the amount of the damages, but not the person or corporation by whom payment was to be made. It has been held in Massachusetts, that where a condition contrary to law is annexed to the laying out of a highway, the condition is void, but the laying out is to stand absolute. *Harrington* v. *Harrington,* 1 Met. 404.

In *Dudley* v. *Cilley,* 5 N. H. Rep. 558, this court decided that the condition annexed to the laying out of a highway is void; and that the law having prescribed the mode of payment of damages, the judicial tribunals cannot shift the burden from the towns.

In this case, the selectmen have not undertaken to make the laying out of the highway conditional upon the payment of damages by the railroad company, and as the road has been constructed and is in use, there seems to be no good reason why the plaintiff should not recover the damages which the selectmen have found that he has sustained.

*Vose,* for the defendants.

We contend, 1. That no right of action exists against the town for the damages, no public highway having been duly laid out, and no damage having been awarded to be paid by the town.

Ellis *v.* Swanzey.

2.  The selectmen had no jurisdiction to act on a petition of the railroad company, for a substitute for a public highway obstructed by the railroad, so as to charge the town with land damages, the road commissioners being, by the act of July 3, 1847, the appropriate tribunal in such cases. Pamph Laws, ch. 486.

3.  The petition was insufficient to justify the laying out of a public highway, in not alleging that it was required for the accommodation of the public, and in not stating the termini or route of the ways prayed for.

4.  There is nothing in this case to show that the highway described in the return was laid out for the accommodation of the public, or that there was occasion for a public highway. The language of the petition and of the record imports that the laying out was for the accommodation of the applicant, namely, the railroad company; and that such was in fact the case, is apparent from the circumstance that the damage was awarded to be paid by that company, and not by the town.

*Wheeler*, in reply.

Our answer to the first position of the defendant is, that the selectmen were never called upon to say by whom the damages should be paid. The words in the report are mere surplusage. The town is not in a position to deny the existence of the highway. They should not be permitted to deny the acts of their own officers. The validity of the laying out is not to be tried in this way, between the town and the land owner whose land has been taken. He is merely endeavoring to carry out the acts of the town.

In regard to the second position, we say that this was not a proceeding under the act of 1847. It does not so purport in any of its parts or particulars. We do not deny that action might have been taken under that statute, but such was not the case.

As to the third position, we would simply remark that

there is no statute form of a petition. There must be a petition in writing for the road, but the form is entirely immaterial in proceedings of this kind. Such is the well settled practice.

The last position of the defendants is negative by the report itself. The report expressly states that there is occasion for a new highway. We do not deny that these damages may finally be chargeable to the railroad company, and that they will be liable to the town for such sum as they shall pay.

EASTMAN, J. Highways may be laid out by the selectmen, within the limits of a town, whenever there is occasion therefor, either for the accommodation of the public, or the person applying. *Rev. Stat.* ch. 49, § 1.

The selectmen are required to assess the damages sustained by each owner of the land taken for a highway, and insert the same in their return. Rev. Stat. ch. 49, § 13.

The damages assessed upon the laying out of any highway for the accommodation of individuals, are to be paid by them. Those assessed upon the laying out or altering of any highway for the accommodation of the public, are to be paid by the town in which the land taken for such highway shall lie. Rev. Stat. ch. 52, § 7.

In addition to these general provisions upon the laying of highways in any town, we have the special act of July 3, 1847. This act provides, among other things, that if any railroad corporation shall, in constructing or maintaining their railroad, throw any obstruction upon, or cause any obstruction or injury to any highway, bridge, turnpike or private way; or permit any such obstruction or injury already existing, to continue for the space of sixty days after the notice of the same has been given, in any such case the person or persons or corporation, shall have and maintain an action on the case, and recover reasonable damages for the injury. *Provided*, that in any case of obstruction or injury to any

highway, turnpike, private way or bridge, as aforesaid, by any railroad corporation, such railroad corporation may, within sixty days after notice of such obstruction or injury, in writing, given as aforesaid, apply to the road commissioners of the county in which such case may occur, and said commissioners shall notify all interested and examine such obstruction or injury; and, if practicable, lay out a substitute for such highway, turnpike, private way or bridge, and assess damages for the land taken to build such substitute over, in the same way and manner as is now authorized by law in laying out roads; and if such railroad company shall pay for the land so taken, and build at their own expense such substitute within such time and in such manner as said road commissioners shall order and direct, and pay the expenses of the commissioners, and file a written certificate, signed by said road commissioners, that said railroad corporation have so built such substitute, and paid all expenses as aforesaid, in the office of the clerk of the court of common pleas in said county, then no such action on the case shall be sustained. Pamph. Laws, ch. 486.

At the time the application was made by the Ashuelot Railroad corporation to lay out the highway in question, the corporation were probably liable to an action for obstructing highways under the provisions of this act of July 3, 1847; and the proceedings by them may have been intended to avoid this liability, and prevent actions that might otherwise be brought. Be that as it may, the proper and regular course for the railroad to have taken was, to have applied to the road commissioners of the county, under the provisions of this act, and had a substitute laid out for the road obstructed; but instead of taking that course they applied to the selectmen, and the road was laid in the manner set forth in the case.

Now the general position of the plaintiff is, that the road was legally laid out as a public highway; that the selectmen had no power to award that the damages should be paid by

the railroad company, and hence that part of the return ordering the damages to be thus paid is surplusage and should be rejected, leaving the award to stand in general terms, and the damages to be paid by the town.

This road was laid out by the selectmen, upon the petition of the corporation, and in consequence of the obstruction by the railroad of the public highway. The request was " to lay out a new highway as a substitute for the one taken by the railroad." The legislature had granted a charter to the railroad, and had empowered them to obstruct, if necessary, any highway in the course of its track; and had also provided a specific remedy for the evil occasioned by the obstruction, should it arise; and ordinarily specific legislation supersedes general statutes upon the particular subject of its enactment. It is clear that. the selectmen had no power to lay out the road under the act of 1847. The power conferred by that act was given to the road commissioners alone. It is clear, also, that if the act of 1847 superseded the general statute, in regard to the powers of selectmen to lay all roads within the limits of their respective towns, so as to confine this particular class of cases to the jurisdiction of the road commissioners, then no road has been legally laid. It appears to us that there can be but little doubt in regard to the matter; but however this may be,•and however this statute should be construed, we think it plain that the laying out in this instance, if valid at all, must be treated as having been done for the accommodation of the railroad corporation, who had obstructed the old road, who had petitioned for the new one, and who were obliged by law to remove the obstruction or furnish a substitute. A corporation is not a person, in the literal sense of the phrase used in the statute, for whose accommodation a road is laid out, but no good reason occurs to us why a corporation may not, as a general thing, apply to the selectmen to have a highway laid out for their accommodation as well as an individ-

ual; and why it might not be laid out in the same manner and upon the same conditions.

The road in question is not of the character usually laid for the accommodation of individuals, neither is it of the character contemplated by the general statute to be laid for the accommodation of the public. Indeed, when the general statute was first passed a railway was not in existence. The public were sufficiently accommodated by the highway until the corporation interfered and deprived them of its use. The corporation took the highway for their own accommodation and for their own benefit, and it would be strange indeed if the town could be legally and constitutionally compelled to make a substitute, and pay for the land taken therefor. If the road was legally laid at all, it must be held to have been done for the accommodation of the petitioners. At all events, we have no hesitancy in holding that it was not a highway legally laid out for the accommodation of the public, under the general statute of the State, and that, consequently, the town is not liable to pay the damages for the land taken.

But it is said, in argument, that the town is not in a situation to deny the existence of the highway; that they should not be permitted to repudiate the acts of their own agents; and that the validity of the laying out is not to be tried in this way.

We have already decided, at this term, in this county, in the case of *Gurnsey* v. *Edwards & a.*, that where there is no provision of law by which the proceedings of an inferior court, or other tribunal of specified and limited powers, may be re-examined or reviewed, they may be inquired into collaterally, and that the doings of selectmen fall under this class. We also held in that case that the party proposing to take advantage of the illegality, must be in a situation so to do; and we see no reason to depart from either of these grounds in the case before us.

Ordinarily, towns cannot be heard to deny the legality of

the doings of their own duly elected and qualified agents, upon matters where they are competent to act, for whatever is done by a general agent, within the scope of his authority, binds the principal. But the town have, in this case, done nothing to preclude them from defending against the acts of the selectmen, if those acts are beyond the scope of their powers. The very point of the case is, what have the selectmen done? What do their acts show? They have laid out a road upon the petition of the Ashuelot railroad corporation, as a substitute for the highway taken by them, and have awarded that the land damages shall be paid by the company. And the court hold that probably the selectmen had no power to act in the premises; but if they had, the laying out must be regarded as done for the accommodation of the railroad company. There is clearly no principle infringed in permitting the town to defend upon these grounds. In the one view, it is showing that the selectmen have transcended their powers, and in the other it is simply putting a construction upon their acts.

It appears that the highway was constructed and opened for travel by the corporation soon after the road was laid out; and it cannot be doubted, taking the whole proceedings together, that the selectmen would not have laid the road, had they supposed the town would be obliged to pay the land damages. Counsel state that the corporation will be liable to the town for such sum as they shall pay; if that be so, it would have been better to have paid it in the first instance, and thereby have saved this litigation. According to the provisions of the case there must be

*Judgment for the defendants.*